UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 3:10cr128(RNC) |
| v. | |
| ROBERT TREGLIA | November 30, 2010 |

### GOVERNMENT'S SENTENCING MEMORANDUM

**I.      BACKGROUND**

On June 16, 2010, a federal grand jury sitting in New Haven returned an eleven-count Indictment against the defendant and seventeen others charging various narcotics offenses. Specifically, the Indictment charged this defendant in Count One with conspiring to possess with the intent to distribute powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846, and in Count Eleven with possession with the intent to distribute powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  The defendant was arrested on June 17, 2010 and has been in federal custody since that date.

On April 16, 2010, the defendant pleaded guilty to Count One of the Indictment.  At the time of the guilty plea, the defendant entered into a written plea agreement.  As part of the plea agreement, the Government indicated that it was filing a second offender notice under 21 U.S.C. § 851 based on the defendant's prior drug felony conviction, increasing the maximum incarceration term to thirty years.  In addition, the defendant agreed that the quantity of powder cocaine involved in his offense was greater than 50 grams, but not greater than 100 grams.  The Government agreed to recommend a three-level reduction for acceptance of responsibility, resulting in an adjusted offense level of 13. The parties also agreed that the defendant fell into Criminal History Category III, so that his guideline incarceration range was 18-24 months.  The defendant waived any challenge to his prior

drug felony conviction and waived his right to appeal or collaterally attack any sentence that does not exceed 24 months' incarceration. The Government agreed to move to dismiss Count Eleven of the Indictment after sentencing.

Had this case proceeded to trial, the Government would have proven the following. Beginning in January 2010, the Drug Enforcement Administration ("DEA") began using a known and reliable cooperating witness ("CW-1") to make several controlled purchases of powder cocaine from an individual identified as GAVIN HAMMETT. CW-1 engaged in these controlled purchases of powder cocaine from HAMMETT (which are charged as individual counts in the Indictment) on March 1, March 10, March 24, April 8, and April 29, 2010, for quantities ranging between 15 grams and 50 grams, and for a total quantity of approximately 170 grams.

On April 23, 2010, based in part on the controlled purchases set forth above, United States District Judge Mark R. Kravitz signed an Order authorizing the interception of wire communications occurring over two cellular telephones used by HAMMETT to operate his drug trafficking operation (Target Telephones 1 and 2). Interceptions over Target Telephones 1 and 2 commenced the same evening. Intercepted calls, surveillance, and seized narcotics confirmed that HAMMETT was overseeing a structured organization operating primarily in Norwalk, Connecticut, which was distributing large quantities of crack cocaine and powder cocaine. HAMMETT employed several individuals who sold drugs, delivered drugs, picked up drugs and maintained stash houses on his behalf. During the course of the wiretap interceptions, it became apparent that HAMMETT made regular purchases of quantities of powder cocaine, ranging from 200 grams to 400 grams, from a Bronx-based source-of-supply later identified as JOSE LUIS ALVARADO, a.k.a. "Luis Velez." HAMMETT then converted some of the cocaine into crack cocaine, broke both the powder and crack

cocaine down into smaller quantities, and resold it to a wide customer base comprised of over a dozen individuals. HAMMETT dealt in quantities ranging from as little as $20 bags to ounces, depending on the customer.

On May 21, 2010, based in part on the interceptions over Target Telephones 1 and 2, along with physical surveillance, United States District Judge Mark R. Kravitz signed an Order authorizing the interception of wire communications occurring over Target Telephone 3, the cellular phone used by ALVARADO. Interceptions over Target Telephone 3 commenced that same day. Wiretap interceptions, along with physical surveillance, revealed that ALVARADO ran his drug trafficking operation primarily out of two addresses in the Bronx: 1774 Eastburn Avenue, Apartment 4H, and 1796 Grand Concourse, Apartment 3C. ALVARADO used different sources to obtain cocaine and heroin. At the time of ALVARADO's arrest in this case, law enforcement officers seized $11,400 in cash from the Eastburn Avenue apartment, and 46 grams of heroin, 52 grams of powder cocaine and 20 grams of crack cocaine from the Grand Concourse apartment.

ALVARADO supplied cocaine to numerous independent Connecticut-based drug traffickers, including this defendant who traveled to the Bronx to purchase powder cocaine from ALVARADO on several occasions in 2010. The conduct which forms the bases for the charges in Counts One and Eleven of the Indictment occurred on June 4, 2010. On that date, intercepted telephone calls revealed that the defendant was planning to purchase two ounces of powder cocaine from ALVARADO for $2100. Specifically, he ordered "two packets," which he described as "28-28," and ALVARADO indicated that it would cost "2100." Following the meeting, officers conducted a motor vehicle stop at the direction of the DEA and seized approximately 56 grams of powder cocaine from the defendant.

The Pre-Sentence Report ("PSR") found that the base offense level, under Chapter Two of the November 1, 2009 version of the Sentencing Guidelines, was 16 because the defendant was involved in distributing between 50 and 100 grams of powder cocaine. See PSR ¶ 33. With a three-level reduction for acceptance of responsibility, the PSR placed the defendant at an adjusted offense level of 13. See PSR ¶¶ 39-40. The PSR also placed the defendant into Criminal History Category III because he had accumulated five criminal history points from prior convictions. See PSR ¶¶ 47. As a result, the defendant's guideline incarceration range, according to the PSR, is 18-24 months' incarceration. See PSR ¶ 72.

The defendant has not yet submitted a sentencing memorandum. By this memorandum, the Government seeks a sentence within the 18-24 month guideline incarceration range set forth in the PSR and in the written plea agreement.

**II.    DISCUSSION**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S. 296 (2004). See Booker, 543 U.S. at 243. The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. See id. at 245. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 543 U.S. at 245.

After the Supreme Court's holding in Booker rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines

4

range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." See United States v. Fernandez, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).  The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

"[T]he excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have been discarded."  Crosby, 397 F.3d at 111.  "[I]t would be a mistake to think that, after Booker/Fanfan, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

The Second Circuit reviews a sentence for reasonableness.  See Rita v. United States, 127 S. Ct. 2456, 2459 (2007).  The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)."  United States v. Canova, 412 F.3d 331, 350 (2d Cir. 2005).  The Supreme Court has reaffirmed that appellate courts must review sentencing challenges under an abuse-of-discretion

standard. See Gall v. United States, 128 S. Ct. 586 (2007). In Gall, the Supreme Court held that a reviewing court must first satisfy itself that the sentencing court "committed no significant procedural error." Id. at 597. If there is no procedural error, the appellate court may then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id.

Neither the PSR, nor the defendant, has pointed to a legitimate basis for a sentence below the guideline range. To the contrary, a sentence within the guideline range is necessary to reflect both the seriousness of the offense and the extent of the defendant's prior criminal record. First, the defendant engaged in very serious offense conduct. Although his conduct in this case was limited, in that he was only involved in one cocaine transaction during the course of the three-week period of wire interceptions over ALVARADO's cellular telephone, his conduct was serious. He traveled to the Bronx to meet with a large scale cocaine supplier, paid that individual $2100 in cash, and obtained 56 grams of powder cocaine. In addition, the defendant had purchased cocaine from ALVARADO in the past. The defendant's conduct shows that he was not a low-level, neighborhood drug dealer; instead, he was a drug supplier who traveled to the Bronx in order to obtain larger quantities of cocaine for less expensive prices.

Second, the defendant has already received a significant sentence in federal court for a drug distribution offense. In 1993, he was convicted in federal court of conspiracy to possess with the intent to distribute powder cocaine and sentenced to a total effective term of incarceration of 110 months. In that case, the defendant was responsible for distributing much larger quantities of powder cocaine to various regular customers. Also, when he was arrested in that case, he was found in possession of approximately seven handguns and large amounts of cash.

The fact that the defendant has returned to purchasing and redistributing cocaine after having

already served a lengthy federal sentence for the same conduct shows that specific deterrence is an issue which must be addressed here. The defendant has already served a lengthy federal sentence for selling cocaine; he was sentenced to over nine years in jail for this same offense. Yet, despite this prior lengthy sentence, the defendant returned to the drug trade and was caught returning from the Bronx after having purchased over $2000 worth of cocaine from a wholesale supplier. A sentence within the guideline range is necessary to bring home the message to the defendant that his offense conduct was very serious, that his criminal history is significant, and that he is a repeat offender whose second appearance in federal court must be treated with sufficient severity so as to prevent a third appearance.

### III.   CONCLUSION

The Government agrees with the PSR's conclusion that the guideline incarceration range in this case is 18-24 months' incarceration and asks the Court to impose a sentence within this range.

Respectfully submitted,

DAVID B. FEIN
UNITED STATES ATTORNEY

/s/
ROBERT M. SPECTOR
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT18082
157 CHURCH STREET; 23rd FLOOR
NEW HAVEN, CT 06510
203-821-3746

## C E R T I F I C A T I O N

  I hereby certify that on 30 November 2010, the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                /s/
                ROBERT M. SPECTOR
                ASSISTANT UNITED STATES ATTORNEY